1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

RONALD KWAME GAINES,

    *Petitioner*,

vs.

DWIGHT NEVEN, *et al.*,

    *Respondents*.

2:10-cv-01367-RLH-NJK

ORDER

    This habeas matter under 28 U.S.C. § 2254 comes before the Court for a final decision on the grounds that remain.

### *Background*

    Petitioner Ronald Kwame Gaines challenges his 2006 Nevada state conviction, pursuant to a jury verdict, of attempted robbery and his adjudication as a habitual criminal, in connection with a December 23, 2005, attempted robbery.  He challenged the state court judgment of conviction on direct appeal and in a state post-conviction petition.

    The grounds that remain for consideration, in the main, present claims of alleged ineffective assistance of counsel.  The remaining claims include: (a) Ground 11, alleging ineffective assistance of appellate counsel for failing to challenge alleged prosecutorial misconduct; (b) Grounds 16 and 17, alleging ineffective assistance of trial and appellate counsel for failing to adequately challenge the habitual criminal adjudication; (c) Ground 18, alleging that petitioner was denied due process in the habitual criminal adjudication; and (d) Ground 24, alleging ineffective assistance of trial counsel for failing to request a "theory of the

1  case" jury instruction.  The substantive claim in Ground 18 is subject to a procedural default,

2  and petitioner must establish ineffective assistance of appellate counsel in Ground 16 in order

3  to establish cause and prejudice to overcome the procedural default of Ground 18.

4       The Court will set forth the factual particulars relevant to each ground in the discussion

5  of the grounds, to the extent necessary.

6                         *Governing Law*

7       The Antiterrorism and Effective Death Penalty Act (AEDPA) imposes a "highly

8  deferential" standard for evaluating state-court rulings that is "difficult to meet" and "which

9  demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*,

10  131 S.Ct. 1388, 1398 (2011).  Under this highly deferential standard of review, a federal court

11  may not grant habeas relief merely because it might conclude that a decision was incorrect.

12  131 S.Ct. at 1411.  Instead, under 28 U.S.C. § 2254(d), the court may grant relief only if the

13  decision: (1) was either contrary to or involved an unreasonable application of clearly

14  established law as determined by the United States Supreme Court based on the record

15  presented to the state courts; or (2) was based on an unreasonable determination of the facts

16  in light of the evidence presented at the state court proceeding.  131 S.Ct. at 1398-1401.

17       A state court decision on the merits is "contrary to" law clearly established by the

18  Supreme Court only if it applies a rule that contradicts the governing law set forth in Supreme

19  Court case law or if the decision confronts a set of facts that are materially indistinguishable

20  from a Supreme Court decision and nevertheless arrives at a different result.  *E.g.*, *Mitchell*

21  *v. Esparza*, 540 U.S. 12, 15-16 (2003).  A decision is not contrary to established federal law

22  merely because it does not cite the Supreme Court's opinions.  *Id.*  Indeed, the Court has held

23  that a state court need not even be aware of its precedents, so long as neither the reasoning

24  nor the result of its decision contradicts them.  *Id.*  Moreover, "[a] federal court may not

25  overrule a state court for simply holding a view different from its own, when the precedent

26  from [the Supreme] Court is, at best, ambiguous."  540 U.S. at 16.  For, at bottom, a decision

27  that does not conflict with the reasoning or holdings of Supreme Court precedent is not

28  contrary to clearly established federal law.

1    A state court decision constitutes an "unreasonable application" of clearly established

2  federal law only if it is demonstrated that the state court's application of Supreme Court

3  precedent to the facts of the case was not only incorrect but "objectively unreasonable." *E.g.,*

4  *Mitchell*, 540 U.S. at 18; *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

5    To the extent that the state court's factual findings are challenged, the "unreasonable

6  determination of fact" clause of Section 2254(d)(2) controls on federal habeas review. *E.g.,*

7  *Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004).  This clause requires that the federal

8  courts "must be particularly deferential" to state court factual determinations.  *Id*.   The

9  governing standard is not satisfied by a showing merely that the state court finding was

10  "clearly erroneous." 393 F.3d at 973.  Rather,  AEDPA requires substantially more deference

11  to the state court's determination:

12        . . . . [I]n  concluding that a state-court finding is unsupported by
         substantial evidence in the state-court record, it is not enough that
13       we would reverse in similar circumstances if this were an appeal
         from a district court decision. Rather, we must be convinced that
14       an appellate panel, applying the normal standards of appellate
         review, could not reasonably conclude that the finding is
15       supported by the record.

16  *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Lambert*, 393 F.3d at 972.

17    Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct

18  unless rebutted by clear and convincing evidence.

19    On a claim of ineffective assistance of counsel, a petitioner must satisfy the two-

20  pronged test of *Strickland v. Washington*, 466 U.S. 668 (1984).  He must demonstrate that:

21  (1) counsel's performance fell below an objective standard of reasonableness; and (2)

22  counsel's defective performance caused actual prejudice.  On the performance prong, the

23  issue is not what counsel might have done differently but rather is whether counsel's

24  decisions were reasonable from his perspective at the time.  The  court starts from a strong

25  presumption that counsel's conduct fell within the wide range of reasonable conduct.  On the

26  prejudice prong, the petitioner must demonstrate a reasonable probability that, but for

27  counsel's unprofessional errors, the result of the proceeding would have been different. *E.g.,*

28  *Beardslee v. Woodford*, 327 F.3d 799, 807-08 (9th Cir. 2003).

1    While surmounting *Strickland*'s high bar is "never an easy task," federal habeas review

2  is "doubly deferential" in a case governed by AEDPA.  In such cases, the reviewing court must

3  take a "highly deferential" look at counsel's performance through the also "highly deferential"

4  lens of § 2254(d).  *Pinholster*, 131 S.Ct. at 1403 & 1410.

5    The petitioner bears the burden of proving by a preponderance of the evidence that

6  he is entitled to habeas relief.  *Pinholster*, 131 S.Ct. at 1398.

7                                      *Discussion*

8    ***Ground 11:  Effective Assistance of Counsel – Alleged Prosecutorial Misconduct***

9    In Ground 11, petitioner alleges that he was denied effective assistance of appellate

10  counsel when counsel failed to raise a claim of alleged prosecutorial misconduct on direct

11  appeal.  Petitioner alleges that the prosecutor engaged in misconduct during oral argument

12  when he referred to Gaines needing his "next fix," suggesting that he was a drug addict with

13  allegedly no supporting evidence in the record.  Petitioner alleges that trial counsel objected

14  to the argument at his urging but that counsel thereafter either failed or refused to pursue the

15  issue on direct appeal.

16    At trial, the State presented evidence tending to establish the following.[1]

17    According to his testimony, Marek Urbanowicz was walking with a newfound female

18  companion from the former Western Hotel and Casino in Las Vegas to his room at the nearby

19  Bargain Motel.[2]  As they were walking down a dimly-lit upstairs corridor in the motel to his

20  room, he was attacked from behind.  The assailant grabbed him by the throat with one hand

21

22    [1]The Court makes no credibility findings or other factual findings regarding the truth or falsity of

23  evidence or statements of fact in the state court.  The Court summarizes these factual assertions solely as
     background to the issues presented in this case, and it does not summarize all such material.  No statement

24  of fact made in describing statements, testimony or other evidence in the state court constitutes a finding by
     this Court. The present recital of the evidence constitutes only an overview for context.  Any absence of

25  mention of a specific piece of evidence or category of evidence in this overview does not signify that the Court
     has overlooked the evidence in considering petitioner's claims.

26

27    [2]The former Western Hotel and Casino, at 899 Fremont Street, was a low roller casino eastward on
     Fremont from the more tourist-frequented casinos underneath the canopy of the Fremont Street Experience.

28  The Western likely was the end of the line for many low denomination slot machines, as well as for some of
     its denizens.  Urbanowicz acknowledged in his testimony that his newfound companion likely was a prostitute.

-4-

1    and grabbed for his wallet in his pants pocket with the other.  The two men struggled, but

2    Urbanowicz ultimately was able to get the upper hand and keep the assailant at bay by

3    holding him by his hair.  Urbanowicz yelled for help from the motel security guard during the

4    attack, and the guard ultimately brought the police.  Urbanowicz identified Gaines as the

5    assailant both when the police responded a few moments later and thereafter at trial.[3]

6        D'Onte Walker was the security guard on duty at the Bargain Motel that evening.

7    According to Walker's testimony, he saw four persons come in through the gate and head up

8    the stairs, including Urbanowicz, two black females, and a black male.  Typically, after guests

9    went up the stairs, Walker then would hear the sound of footsteps proceeding on down the

10   second-floor hallway.  This time, however, he instead heard a lot of noise concentrated in one

11   location overhead, and he then heard Urbanowicz and a female voice yelling for help from

12   security.[4]

13       When Walker went up to the second floor to investigate, he saw Urbanowicz on top

14   of Gaines holding him by the hair.  Urbanowicz and the two women present said that he had

15   attacked Urbanowiczc.  Walker checked Gaines for weapons, and he then went downstairs to

16   get police officers who had been handling an incident next door.  As he and an officer were

17   walking back to the motel a moment later, Walker saw Gaines exiting the motel through the

18   gate.  Walker pointed him out for the officer, who detained Gaines.  Walker did not know

19   Gaines personally, but he had seen him earlier that day when Gaines was panhandling at a

20   nearby convenience store and asked him for money.[5]

21       Officer Richard Huber of the Las Vegas Metropolitan Police Department ("Metro")

22   testified, *inter alia*, as to the point  when Walker pointed Gaines out to him exiting the motel.

23   Huber testified that it appeared to him that Gaines was trying to "hide in plain sight" by trying

24   to leave the motel in a nonchalant manner and fade into the night.  #31, Ex. 6, at 111-13.

25   _____

26       [3]#31, Ex. 6, at 17-57.

27       [4]*Id.*, at 67-73, 80-85 & 91-93.

28       [5]*Id.*, at 73-80, 86-90 & 93-107.

During D'Onte Walker's testimony, he testified that Gaines "[j]ust seemed like he was under the influence because it seemed like he didn't remember what he had just went through and just tried to do."   When asked on cross-examination whether there was a lot of panhandling in the area, he responded: "No.  It's drug dealing."  He elaborated that, based upon his work there daily as a security officer, there was a "lot of drug abuse" in the area.[6]

Officer Huber also testified as to Gaines' demeanor when he took him into custody at the Bargain Motel that evening.  He testified:

> He was obviously intoxicated.  His speech was slurred, his eyes watery, his gait unstable.

Huber further testified that he did not smell any odor in association with the intoxication because he did not get close enough to smell any such odor.  He testified in the context of discussion of another topic that he generally tried to avoid getting physically close to anyone that he spoke to on the streets in the course of his duties as a patrol officer.[7]

During closing argument, the prosecutor referred to the testimony that Gaines had been intoxicated, and she referred three times to his allegedly needing money to get "his next fix."

Early in the argument, the prosecutor stated:

> You heard he was intoxicated at the time.  You heard he looked like he was intoxicated earlier that day.  So he had quite a need for money because he needed to pay for his habit.
>
> He needed to go out and get his next fix and he was willing to go to violent measures in order to get it.
>
> The witnesses tell you that.  The people at the scene who yelled out that guy just attacked that guy tell you that.  The Defendant's own actions afterwards tell you that, and your common sense tells you that.
>
> There's an instruction on common sense, in fact, because we want you to be free of bias and prejudice, but we don't expect to [sic] you leave your common sense at the door.

#31, Ex. 6, at 155.

---

[6]#31, Ex. 6, at 78 & 102-03.

[7]*Id.*, at 112, 125, 127, 133-34 & 139-41.

Several pages later in the transcript, the prosecutor addressed the efforts by the defense to cast doubt on Urbanowicz' testimony by pointing to his lack of recollection of details such as what specific items of clothing each individual was wearing at the time.  She then identified the points that she maintained corroborated "the main details" of his testimony, *i.e.*, that Gaines had attacked him from behind and tried to steal his wallet.  She pointed to Gaines' actions afterwards, to the women yelling that Urbanowicz was being attacked, and to the statements by the witnesses to the police afterwards.  She then continued:

> It's also corroborated in general just by the Defendant's motive and need for money.
>
> The State doesn't have to prove a motive per se, but it's something in a case that definitely helps prove a case that he needed money.
>
> You heard earlier in the day he had been begging for money. That was at he said approximately noon.  So by the nighttime he was probably getting pretty desperate.  He probably needed his next fix.
>
> Now, I talked about in opening how Mr. Urbanowicz was a good target for several reasons.
>
> According to the officer's testimony who said there weren't very many people out there that night, it was probably the only guy he [*i.e.*, Gaines] could find.  There weren't that many people out there, so the one guy he found is the one unlucky person that gets victimized by a drug addict who needs money to get his next fix.

#31, Ex. 6, at 158-59.

At this point, defense counsel objected, in the following exchange:

> MR. PARRIS: Your Honor, I have to object at this point in time. We have three references now to get his next fix.  She just called my client a drug addict.  We've had no evidence of that whatsoever.  This is completely inflammatory.
>
> MS. KEENAN: That's true, your Honor.  He said he was under the influence of a controlled substance.
>
> THE COURT: All right.  With that understanding, we'll move on from there, all right?

#31, Ex. 6, at 160.

In the defense closing, counsel used the State's reference to Gaines allegedly needing a fix to argue that the State was desperate because it had a weak case.  Counsel

summarized the evidence that he maintained reflected that Gaines was intoxicated on alcohol, not on a controlled substance.  Counsel then argued:

> But the State wants you to believe and told you in so many words this guy's a drug addict even though there's no evidence to support that.
>
> I want all of you to ask yourself, why would the State want to put that kind of image in your mind?
>
> Well, obviously, if you believe he's a druggie, there was evidence to support that, you'd probably take that into account when determining whether he committed these crimes.  Drug dealers tend to committed [sic] crimes by the very definition.  Drug users tend to commit crimes by definition.
>
> I want you to ask yourself why is the State so desperate that it has to try and label my client as a drug user when there's nothing to support it.
>
> Ladies and gentlemen, the State's concerned about its case, and I don't blame them.

#31, Ex. 6, at 175-76.

Defense counsel's argument forced the prosecutor to backtrack to a degree in her rebuttal argument:

> As I told you and as the Judge instructed you, the State does not have to prove motive.  It's not a part of the elements of the crime.
>
> What we're trying to deduce however is what might be a motive, and we know for a fact that the Defendant was begging for money earlier in the day, and the testimony showed that the Defendant was high.
>
> Now, whether he's a drug user or a drug addict, that's true, I don't think that came out, but it did come out that this is an area that's known for drug use, known for drug sales, and the Defendant is hanging out there all day begging for money.
>
> I'll submit it to you guys to determine what you think is going on.
>
> But I want you to know the State does not need that as the defense tries to say.  It's not part of the case that we have to prove.

#31, Ex. 6, at 178.

On state post-conviction review, defense counsel testified that he did not pursue the issue further on appeal because "I think there were stronger issues on appeal."  He identified in particular the issue of whether the defense was entitled to an instruction as to an allegedly

1  lesser related defense of battery.  He testified that "I think that was the stronger issue rather
2  than the State claiming based on no evidence that one individual was a drug user and needed
3  a fix."  He acceded that, "in a vacuum, yes," prosecutorial misconduct would be a "legitimate"
4  issue on appeal "[i]f that were the only mistakes made in this trial or in a trial."  He then
5  reiterated: "However, again, there were stronger issues on which the appeal could be based."
6  When asked whether raising the issue would strengthen a cumulative error claim, he
7  responded: "I honestly couldn't say it would make it a much stronger appeal, but it would
8  provide more strength to a cumulative error argument."[8]

9      The state district court rejected petitioner's claim that he was denied effective
10  assistance on appeal from failure to raise the issue because  he could not show that he was
11  prejudiced by the alleged misconduct given the evidence establishing his guilt beyond a
12  reasonable doubt.  On the state post-conviction appeal, the Supreme Court of Nevada
13  affirmed, noting that petitioner had not specifically addressed or challenged the district court's
14  findings.  The state supreme court held that the court below had not erred in rejecting
15  petitioner's claims of ineffective assistance of appellate counsel on the premise that the
16  claims did not have a reasonable probability of success on appeal.[9]

17      The state supreme court's rejection of this claim was neither contrary to nor an
18  unreasonable application of clearly established federal law.

19      When evaluating claims of ineffective assistance of appellate counsel, the performance
20  and prejudice prongs of the *Strickland* standard partially overlap.  *E.g., Bailey v. Newland*, 263
21  F.3d 1022, 1028-29 (9th Cir. 2001); *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989).
22  Effective appellate advocacy requires weeding out weaker issues with less likelihood of
23  success.  The failure to present a weak issue on appeal neither falls below an objective
24  standard of competence nor causes prejudice to the client for the same reason – because the
25  omitted issue has little or no likelihood of success on appeal.  *Id.*

26  _____

27      [8]#31, Ex. 36, at 13-14.  See also *id.*, at 18-19.

28      [9]#43, Ex. 44A, at 3; #31, Ex. 51.

1    On the underlying substantive claim, petitioner relies upon cases, such as *Berger v.*

2  *United States*, 295 U.S. 78 (1935).   However, *Berger* and similar cases concern the

3  supervisory authority of federal courts over federal prosecutors in federal criminal trials and

4  make no pertinent constitutional holding.  Petitioner must demonstrate that the state supreme

5  court's rejection of his claim was an unreasonable application of *constitutional* holdings of the

6  United States Supreme Court.  The Supreme Court does not exercise supervisory authority

7  over state criminal trials as it does over federal criminal trials.  The high court can direct the

8  manner in which federal criminal proceedings are conducted even in the absence of

9  constitutional error, but it may not do so with regard to state criminal cases.  *See,e.g.,*

10  *Danforth v. Minnesota*, 552 U.S. 264, 289 (2008).  Thus, petitioner's citation to Supreme

11  Court cases directed to supervisory authority over federal prosecutors is unavailing.[10]

12    To the further extent that the state supreme court's rejection of the ineffective-

13  assistance claim was based upon a conclusion that petitioner could not establish a basis for

14  reversal under Nevada state law, that is the end of the matter in that regard.  The Supreme

15  Court of Nevada is the final arbiter of Nevada state law, including state law standards

16  pertaining to when alleged prosecutorial misconduct provides a basis for reversal.

17    Turning to alleged constitutional error, the standard of review for alleged prosecutorial

18  misconduct, is "'the narrow one of due process, and not the broad exercise of supervisory

19  power'" applied in federal criminal trials.  *See,e.g., Darden v. Wainwright*, 477 U.S. 168, 181

20  (1986)(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)).  "The relevant question

21  is whether the prosecutor['s] comments 'so infected the trial with unfairness as to make the

22  resulting conviction a denial of due process.'"  *Id*. (quoting *Donnelly*, 416 U.S. at 643).

23    State courts have considerable leeway in applying a broad principle of due process

24  framed in such generality to the facts of a particular case.  As the Supreme Court observed

25  in *Harrington v. Richter*:

26

27  ───────────────

28    [10]Similarly, the American Bar Association Standards for Criminal Justice do not necessarily establish what the Constitution commands.  *See,e.g., Jones v. Barnes*, 463 U.S. 745, 753 n.6 (1983).

-10-

> A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision. *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004).   And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Ibid*. . . . .

131 S.Ct. 770, 786 (2011).

In this case, the state supreme court's conclusion that a constitutional claim of prosecutorial misconduct would not have had a reasonable probability of success on appeal did not constitute an objectively unreasonable application of the broad principle of due process on the underlying substantive claim.  The testimony at trial in fact did not distinguish between whether Gaines appeared intoxicated from drugs or instead from alcohol.  The inference that the prosecutor sought to draw from the evidence -- that he was intoxicated on drugs in an area with high drug use where he had been hustling for money during the course of the day – was neither compelled by nor refuted by the evidence.  Moreover, defense counsel was able to turn the State's argument back against the State by maintaining that the allegedly unsupported reference to drug use reflected that the State was having to desperately clutch at straws due to having a weak case.  Both defense counsel's objection and his closing argument apparently had some impact, as the State thereafter backtracked and conceded that there was no direct evidence of drug intoxication *per se*.  In light of this give-and-take over the course of the entirety of the closing arguments and the actual strength of the evidence against petitioner, a conclusion that there was not a reasonable probability of success on the underlying constitutional claim on a direct appeal was not an unreasonable application of clearly established federal law.

Ground 11 therefore does not provide a basis for federal habeas relief.[11]

---

[11]Respondents refer once in the answer to Ground 11 asserting a claim that trial counsel was ineffective. See #42, at 9, line 11.  This reference appears to have been a clerical error.  The remaining discussion addresses whether the state supreme court's rejection of a claim of ineffective assistance of appellate counsel was contrary to or an unreasonable application of federal law.  See *id.*, at 9-14.

(continued...)

-11-

*Grounds 16-18: Habitual Criminal Adjudication Claims*

Grounds 16 through 18 all concern the habitual criminal adjudication and thus are discussed together. The three claims proceed from, *inter alia*, a common factual premise that the State failed to file certified copies of the prior judgments of conviction upon which the habitual criminal adjudication was based. Petitioner presents a procedurally-defaulted substantive claim in Ground 18 based upon an alleged failure to file the underlying prior convictions. He further presents associated claims of ineffective assistance of trial counsel, in Ground 17, and of appellate counsel, in Ground 16, for failing to pursue the substantive claim in Ground 18. As noted previously, petitioner must demonstrate ineffective assistance of appellate counsel in Ground 16 in order to establish cause and prejudice to overcome the procedural default of the underlying substantive claim in Ground 18.

Certified copies of the original state court record materials reflect the following.

On March 16, 2006, prior to the April 11, 2006, trial, the State filed a notice of its intent to seek a habitual criminal adjudication in the Clark County prosecution. The notice listed

---

[11](...continued)

In federal Ground 11, petitioner quite clearly presents a claim only of ineffective assistance of appellate counsel. The reference therein to trial counsel's action during the closing argument serves merely as backdrop for argument indisputably presenting a claim only of ineffective assistance of appellate counsel in not thereafter pursuing the preserved issue thereafter on direct appeal. See #3, at electronic docketing pages 60-64 (petitioner reverses the proper order of the petition pages, placing the exhaustion page first, then pages with allegations, and finally what should be the first page of each ground last).

Moreover, petitioner clearly exhausted only a claim of ineffective assistance of appellate counsel on the state post-conviction appeal, and the Supreme Court of Nevada considered only a claim of ineffective assistance of appellate counsel in its decision. See #31, Ex. 49, at 5-6 & 8-10 (fast track statement); *id.*, Ex. 51 (order of affirmance).

Respondents' clerical error in referring once to the claim as a claim of ineffective assistance of trial counsel neither amends the federal petition to present a claim that it does not nor exhausts a claim that is unexhausted.

To any extent that a claim of ineffective assistance of trial counsel *arguendo* were both presented and exhausted, such a claim clearly is without merit, whether on deferential or *de novo* review. Trial counsel objected and preserved the issue, made able and creative use of the State's argument in his own closing, and caused the State to backtrack on the issue before the jury in its rebuttal argument. Given the evidence against Gaines, there is not a reasonable probability that any different action by trial counsel with regard to the State's closing argument on this point would have led to a different outcome at trial.

three prior Clark County convictions, *to wit*, a 1992 conviction for battery with use of a deadly weapon, a 1998 conviction for robbery, and a 2004 conviction for attempt robbery.[12]

At the outset of the April 11, 2006, trial, defense counsel memorialized on the record outside the presence of the jury his final plea discussion with petitioner.  Counsel noted that he had informed Gaines that if he accepted the then pending offer, the court "based upon his criminal records and the facts and circumstances of this case" was not inclined to sentence him as a defendant guilty only of a gross misdemeanor.  He stated that he also informed Gaines that if he went to trial and were convicted, "based upon what your Honor knows of his criminal record he very well may be a suitable candidate for habitualization, which may be either a five to 20 or potentially a ten to life if he has the small versus the large habitual."[13]

During the trial, the court conducted a colloquy with Gaines outside the presence of the jury regarding his decision as to whether to testify.  The court informed Gaines that if he testified the State would be able to inquire regarding his prior convictions, referring specifically to his convictions for attempt robbery, robbery, and battery with a deadly weapon.[14]

On April 21, 2006, after petitioner was found guilty by the jury on April 11, 2006, the State filed a notice of intent to seek a habitual criminal adjudication and sentencing memorandum in the Clark County prosecution.  The notice listed the following three prior Clark County convictions: (a) a 1992 conviction for battery with use of a deadly weapon in C102931; (b) a 1998 conviction for robbery in C154550; and (c) a 2004 conviction for attempt robbery in C198972.  The notice and memorandum further discussed petitioner's prior criminal history, including, *inter alia*, the underlying particulars of the three above-listed Clark County convictions.[15]

/ / / /

---

[12]#43, Ex. 4A (certified copy by the state district court clerk).

[13]#31, Ex. 6, at 3-4.

[14]#31, Ex. 6, at 61.

[15]#43, Ex. 9A, at 1-4 (certified copy by the state district court clerk).

-13-

1    The State sought a habitual criminal adjudication under the "small" rather than the

2    "large" Nevada habitual criminal statute.  Under the "small" habitual criminal statute, N.R.S.

3    207.010(1)(a), a defendant with two prior qualifying felony convictions could be sentenced as

4    a habitual criminal to 5 to 20 years imprisonment.  Under the "large" habitual criminal statute,

5    N.R.S. 207.010(1)(b), a defendant with three prior qualifying felony convictions could be

6    sentenced as a habitual criminal to a minimum 10 to 25 years, life with the possibility of parole

7    after 10 years, or life without the possibility of parole.[16]

8    Notably, the "small" habitual criminal adjudication that the State sought required only

9    two prior qualifying convictions.

10    The State attached copies of two prior Clark County judgments of conviction to the

11    notice and memorandum filed on April 21, 2006.  The copy of each judgment carried a stamp

12    by the clerk certifying that the copy was a true and correct copy of the original on file.

13    For case C154550, the State attached: (a) a copy of a judgment of conviction of

14    robbery filed on December 30, 1998, and also certified to be a true and correct copy that date;

15    (b) a copy of an amended judgment of conviction filed on March 18, 1999, and also certified

16    to be a true and correct copy that date; (c) an executed written guilty plea agreement with a

17    charging document; and (d) an associated arrest report and charging materials.[17]

18    For case C198972, the State attached: (a) a copy of an amended judgment of

19    conviction of attempt robbery filed on February 24, 2005, and also certified to be a true and

20    correct copy on February 24, 2005; and (b) a written guilty plea agreement and associated

21    charging document.[18]

22    The copy of the foregoing filing – the notice and memorandum with attachments – in

23    the federal record was certified by the state district court clerk to be a true and correct copy

24    of the original on file. #43, Ex. 9A, at electronic docketing page 42.

25    _____

26    [16] #43, Ex. 9A, at 4-5 & 9 (certified copy by the state district court clerk).

27    [17] Id., at electronic docketing pages 21-42.

28    [18] Id., at electronic docketing pages 11-20.

1    The matter came on for sentencing on June 13, 2006.  The state district court referred

2    twice to having reviewed the State's notice and memorandum, which referenced the three

3    prior Clark County convictions.  The State, consistent with the memorandum, again sought

4    sentencing under the "small" habitual criminal statute, with a sentence of 5 to 20 years.  No

5    challenge was made to the proof of the three prior Clark County convictions in the also Clark

6    County prosecution.  Defense counsel argued for a lesser sentence of 36 to 96 months,

7    maintaining that such a sentence "would appropriately reflect his criminal history."  The court

8    sentenced petitioner under the "small" habitual criminal statute to 5 to 20 years, referencing

9    the three prior Clark County convictions.[19]

10    At a May 15, 2009, evidentiary hearing nearly three years later, former defense counsel

11    testified that he had no independent recollection as to what specific documents were filed

12    prior to the sentencing.  He acknowledged that no additional documents were filed at the

13    sentencing itself over and above the notice and memorandum filed previously.  He testified

14    on direct examination that he had been presented prior to the evidentiary hearing with a

15    sentencing memorandum with copies of certified judgments of conviction, but he could not

16    say three years later whether the certified copies were included with the copy of the

17    memorandum that he was provided with at the time.  On cross-examination by the State, he

18    acknowledged the presence of what appears from the details covered in the questioning to

19    be the above-described judgments from C198972 and C154550, with raised seals on the

20    papers certifying the copies.  The presiding judge interjected during the testimony that she

21    had a copy of the original memorandum with the prior judgments of conviction tabbed.[20]

22    Counsel testified that he routinely would review a defendant's SCOPE, or prior criminal

23    record, in preparation for every trial.  In this particular case, Gaines was aware of the prior

24    convictions because the fact that he was eligible for habitual criminal treatment was a factor

25    in discussing the State's plea offer.  The defense also was aware of the prior convictions from

26    _____

27    [19]See #43, Ex. 14A, at 3-6 & 8-9.

28    [20]#31, Ex. 36, at 4-6 & 25-27.

the State's notice of intent to seek habitual criminal treatment approximately a month prior to trial.  It further was the practice of the particular prosecutor and defense counsel to conduct an open file review on the Friday before trial, which included review of certified copies of the prior judgments of conviction.  Gaines again was informed of his prior convictions during the canvass as to his decision to testify, without any denial of the prior convictions.  Thereafter, the sentencing memorandum provided yet further notice of the prior convictions.[21]

Over the course of all of the multiple instances where counseled reviewed the prior Clark County convictions in the Clark County prosecution, counsel encountered nothing that would give him reason to challenge the validity of the prior convictions.  He further acknowledged that the court could have taken judicial notice of the prior judgments.  The presiding judge interjected for the record at this point that all that was required to look up each prior case on the electronic docketing system was the case number.[22]

On redirect, counsel acknowledged that the seals at least on the copy that state post-conviction counsel then was presenting to him as having been filed were not raised.  He further acceded on recross, however, that duplicates are admissible unless there is a valid question as to authenticity.  He reaffirmed both that the defense was fully on notice as to the State's intent to seek habitual criminal treatment based on the convictions and that there was no issue as to the validity of the prior convictions.[23]

At a subsequent September 16, 2009, proceeding on the state petition, the presiding judge informed the parties that the court had examined the evidence vault and that it contained the State's notice with the convictions attached.[24]

_____

[21]#31, Ex. 36, at 28-30.

[22]*Id.*, at 30-32.

[23]*Id.*, at 32-37.

[24]#31, Ex. 42, at 2.  A February 18, 2009, minute entry reflects that the clerk told state post-conviction counsel that no judgments of conviction were admitted into evidence at sentencing. #31, Ex. 63, at 15 (electronic docketing page 111).  What the clerk stated and noted at that time does not override what the

(continued...)

The state district court rejected claims of ineffective assistance of trial and appellate counsel on the merits, and the court further held that the associated substantive claim was procedurally barred because it was not raised on direct appeal.  The state district court expressly found in its oral reasons that "the State did properly file the documents."[25] Thereafter, in its written findings, the court expressly found that "[t]he State presented the sentencing court with a certified copy of each of his Judgments of Conviction and thus any objection raised by [defense counsel] would have been futile."  The court accordingly found that counsel was not ineffective at trial and was not ineffective for not pursuing the arguments on appeal merely because petitioner wished him to do so.[26]

On the state post-conviction appeal, the Supreme Court of Nevada affirmed, noting that petitioner had not specifically addressed or challenged the district court's findings.  The state supreme court held that Gaines had failed to demonstrate prejudice on his claims of ineffective assistance of trial counsel, that the district court had not erred in rejecting petitioner's claims of ineffective assistance of appellate counsel on the premise that the claims did not have a reasonable probability of success on appeal, and that the associated substantive claim was procedurally barred.[27]

The state supreme court's rejection of the claim of ineffective assistance of trial counsel in Ground 17 was neither contrary to nor an unreasonable application of clearly established federal law.  This conclusion follows for multiple reasons that, independently as well as together, compel the rejection of the claim.

---

[24](...continued)
court later reported to the parties on the record as to what was found when the evidence vault was examined. Perhaps the materials with the convictions were presented to the clerk heading into the sentencing but were not docketed and/or reflected as an exhibit through clerical error.  In the final analysis, petitioner presents nothing but supposition to contradict the presiding judge's statement that the court's own examination of the evidence vault reflected that the notice with the convictions was in the vault.

[25]#31, Ex. 42, at 2.

[26]#43, Ex. 44A, at 4 & 5 (certified copy of findings, conclusions, and order).

[27]#31, Ex. 51, at 1-2; see also id., Ex. 62 (noting also that only two prior convictions were necessary).

-17-

1    First, the state courts found as a fact that the State in fact presented a notice with

2    certified copies of each of the prior three judgments of conviction.  Petitioner has not

3    demonstrated that this finding constituted an unreasonable determination of fact following

4    upon the state court's review of the contents of the evidence vault.  That is, petitioner has not

5    established that an appellate panel, applying the normal standards of appellate review, could

6    not reasonably conclude that the finding is supported by the record.  *See Taylor, supra.*  Nor

7    has petitioner presented clear and convincing evidence rebutting the presumption of

8    correctness attached to this factual finding under 28 U.S.C. § 2254(d).  Petitioner has

9    presented nothing more than bald supposition.  Such bald supposition, no matter how many

10    times repeated over the course of state and federal post-conviction review, does not

11    constitute clear and convincing evidence rebutting the state court factual finding.

12    Second, an explicit formal introduction and admission on the record of the prior

13    convictions was not required by Nevada state law to sustain the habitual criminal adjudication.

14    *See,e.g., Hymon v. State*, 121 Nev. 200, 111 P.3d 1092 (2005)(while a certified copy of the

15    prior judgment of conviction is *prima facie* evidence, there was no error requiring reversal

16    where the state district court clearly considered the prior convictions and the admission of the

17    prior convictions was reflected by the exhibit vault, although their admission otherwise was

18    not formally reflected by the record).  The state supreme court's implicit rejection of

19    petitioner's underlying premise of an outcome-changing state law error that was overlooked

20    by trial counsel is the end of the matter on this particular point.  The Supreme Court of

21    Nevada is the final arbiter of Nevada state law, including the underlying Nevada state law

22    predicate to the ineffective-assistance claim.

23    Third, to the extent that the state sentencing memorandum that is of record on federal

24    review presented certified copies of two of the three prior judgments of conviction, only two

25    prior convictions were required for a "small" habitual criminal adjudication.

26    Fourth, even if this Court were to assume, *arguendo*, that the state court record at the

27    time of the habitual criminal adjudication was deficient for lack of certified copies of the

28    judgments of conviction, Gaines indisputably cannot demonstrate a reasonable probability

that a contemporaneous objection by trial counsel would have changed the outcome in the state proceedings.  The salient point here is that all of the prior convictions were Nevada convictions from the same state district court that was conducting the habitual criminal adjudication.  The situation thus was wholly unlike one involving prior out-of-state convictions.  With an out-of-state conviction, the State would have been unable to immediately rectify any *arguendo* deficiency in the proof of the convictions.  In contrast, with Nevada convictions from the Eighth Judicial District Court, the State would have needed – if there were a deficiency in the first instance – only to have the clerk of that court, with a deputy clerk available in the courtroom, certify that the judgments of conviction were true and authentic.  Thus, even if there had been a defect in the technical manner of proof of the convictions and a contemporaneous challenge had been raised on that basis, the *arguendo* defect would have been subject to immediate remediation by the State – further assuming, *arguendo*, that the state district court did not simply take judicial notice of its own prior suit records.

In this regard, petitioner urges that a contemporaneous objection would have preserved a viable claim of error for appeal that would have resulted in his sentence being vacated and a remand for resentencing.  Petitioner fails to apprehend the practical focus of the *Strickland* prejudice inquiry.  There is not a reasonable probability that any such *arguendo* deficiency would have survived to a direct appeal in the first place.  Trial counsel did not object to the prior convictions or their manner of proof at the proceeding because there was absolutely no question that the prior convictions existed and no question that the convictions provided a valid basis for a habitual criminal adjudication.  Any identification of any purported technical deficiency in the State's manner of presenting the prior convictions – from the very same court and as to which there was no true question as to either their existence or validity – simply would have resulted in immediate remediation of the alleged technical deficiency.  Petitioner's bare speculation that an objection to the manner of proof would have been ignored, in a situation involving prior convictions from the same court subject to ready and immediate proof in that court, and thereby lead to a viable appeal claim does not establish prejudice under *Strickland*.  An *arguendo* failure to raise an essentially pointless technical

objection capable of immediate remediation does not constitute ineffective assistance of counsel under the *Strickland* standard.  The Sixth Amendment's requirement of effective assistance of counsel instead is directed to matters of substance that result in prejudice.

The state supreme court's rejection of the claim of ineffective assistance of trial counsel in Ground 17 therefore was neither contrary to nor an unreasonable application of clearly established federal law.

Nor was the rejection of the claim of ineffective assistance of appellate counsel in Ground 16 contrary to or an unreasonable application of clearly established federal law.  At the outset, given the first three points discussed immediately above, there is not a reasonable probability of a different outcome on direct appeal.  First, under the state court factual finding, the evidence vault reflects that the state trial court had certified copies of all of the three prior judgments of conviction from the same court.  Second, the state courts implicitly rejected petitioner's underlying state law premise that the habitual criminal adjudication was subject to reversal and resentencing, with prior state case law supporting such a holding.  Third, to the extent that the sentencing memorandum presented certified copies of two prior judgments, that was all that was required for the "small" habitual criminal adjudication.  Moreover, given that counsel had not raised what would have been a wholly pointless technical objection, if *arguendo* valid in the first instance, in the trial court, appellate counsel in all events had no preserved issue on which to proceed.  There is not a reasonable probability that raising an issue that had not been preserved and that in any event further was of dubious viability in the first instance would have resulted in a different outcome on appeal.[28]

---

[28]Petitioner additionally alleges, to one extent or another, in Grounds 16 and 17 that appellate and trial counsel were ineffective for failing to challenge the habitual criminal adjudication for lack of adequate notice.  This claim has even less of a factual and legal basis than the claim discussed in the text.  Petitioner proceeds on the premise that the habitual criminal adjudication was subject to reversal because the State filed a notice of intent to seek habitual criminal treatment rather than an amended information with a habitual criminal count.  He cites no apposite Nevada case law reversing based upon such an *arguendo* technical state law violation in a circumstance where the defendant clearly was on notice of the State's intent to seek habitual criminal treatment.  In Gaines' case, the state supreme court's holding that there was not a reasonable probability of a different outcome on appeal based upon any such *arguendo* technical state law violation is the final word on that issue.  The Supreme Court of Nevada is the final arbiter of Nevada state

(continued...)

1    Turning then to the substantive claim in Ground 18, petitioner accordingly cannot

2  demonstrate cause and prejudice to overcome the procedural default of the claim because

3  he cannot demonstrate ineffective assistance of appellate counsel in failing to raise the claim

4  on direct appeal.

5    Grounds 16 through 18 therefore do not provide a basis for federal habeas relief.[29]

6    **Ground 24: Effective Assistance of Counsel – Jury Instruction**

7    In the portion of Ground 24 that remains,[30] petitioner alleges that he was denied

8  effective assistance when trial counsel failed to request an instruction on the offense of

9  battery as a "theory of defense" instruction rather than requesting such an instruction as a

10  lesser included or related offense.  Petitioner maintains that this would have allowed him to

11  argue a "theory of defense" that he committed only battery in a fight with Urbanowicz rather

12  than an attempted robbery, on the premise that he did not attempt to take the victim's wallet.

13  He contends that had trial counsel requested the instruction as a "theory of defense"

14  instruction, the state supreme court would have reversed for a failure to give the instruction.

15    At trial, defense counsel requested an instruction on simple battery as a lesser

16  included offense on the facts and circumstances of the case.  He acknowledged that battery

17  _____

18    [28](...continued)

19  law, to the extent relevant to application of the *Strickland* standard to a claim.  The state high court further
    held in a related proceeding that no such *arguendo* technical error deprived the district court of jurisdiction

20  under Nevada state law. #31, Ex. 62.  *See also Barren v. State*, 2009 WL 3191407, slip op., at *3 (Nev.
    2009)(in an unpublished disposition, the state supreme court rejected a claim of ineffective assistance of

21  appellate counsel premised on a contention that the state district court was without jurisdiction after the State
    filed a notice of intent rather than an amended information).  Moreover, there clearly was no basis for a viable

22  federal procedural due process claim on the facts presented.  Petitioner had abundant actual notice both that
    the State was seeking habitual criminal treatment and that it was relying on his prior Clark County convictions.

23  Even if petitioner *arguendo* were able to establish a technical state law error, a mere state law error does not
    give rise to a federal due process claim in this context.  The Due Process Clause does not constitutionalize

24  every jot and tittle of state criminal practice.  The decision in *Walker v. Deeds*, 50 F.3d 670 (9th Cir. 1995), is
    not to the contrary, as it pertains to required findings, not to adequacy of notice.

25
      [29]The Court additionally notes that the certified judgments of conviction filed into the record in this

26  matter confirm beyond peradventure that the prior convictions both existed and were not defective on their
    face.

27
      [30]Petitioner dismissed the claim of ineffective assistance of appellate counsel in federal Ground 24

28  after the Court held that the claim was unexhausted.  See ## 38 & 41.

1 might not necessarily be a lesser included offense of attempted robbery in each and every

2 case.  He maintained, however, that battery potentially would be a lesser included offense

3 due to the manner in which the State had pled and sought to prove the attempted robbery in

4 the particular case.  The State argued that the offenses did not share a common element and

5 battery therefore was not a lesser included offense, as attempted robbery did not require any

6 physical contact.  The trial court rejected the defense request on the basis that battery was

7 not a lesser included offense of attempted robbery.[31]

8      On direct appeal, petitioner, through counsel, argued both that battery was a lesser

9 included offense on the facts of the case and that the trial court should have allowed the

10 instruction as a theory of the case instruction.  The Supreme Court of Nevada held as follows:

11           <u>Lesser included offense instruction</u>

12                In this appeal, we directed full briefing on two issues.  First,
     we directed the parties to brief whether battery is a lesser
13     included offense of robbery under the elements test of
     <u>Blockburger v. United States</u>.  Second, we requested full briefing
14     on whether this court correctly applied the elements test of
     <u>Blockburger</u> in <u>Zgombic v. State</u>.  While Gaines concedes that
15     battery is not a lesser included offense of attempted robbery
     under the elements test of <u>Blockburger</u>, and that <u>Zogmbic</u>
16     represents a correct application of that test, he argues that the
     elements test is not the correct test for settling lesser included
17     offense jury instructions.

18                Instead, Gaines urges this court to adopt an accusatory
     pleading test, under which battery would be a lesser included
19     offense of attempted robbery as the State originally charged that
     crime in the information. In doing so, however, Gaines overlooks
20     our decision in <u>Barton v. State</u>, in which we rejected a similar
     version of his proposed test, and adopted the elements test as
21     the exclusive test for settling lesser included offense jury
     instructions.  Under NRS 175.501, a "defendant may be found
22     guilty ... of an offense necessarily included in the offense
     charged."  Applying the elements test of <u>Blockburger</u> to NRS
23     175.501, we clarified in <u>Barton</u> that a lesser offense is necessarily
     included under that statute "when all of the elements of the lesser
24     offense are included in the elements of the greater offense."

25                Applying <u>Barton</u> to this case, we conclude that battery is
     not a lesser included offense of attempted robbery.  Under NRS
26     200.481, "`[b]attery' means any willful and unlawful use of force

27

28     ───────────────
        [31]#31, Ex. 6, at 61-66.

                                    -22-

or violence upon the person of another." Under NRS 200.380, "[r]obbery is the unlawful taking of personal property from the person of another, or in his presence, against his will, by means of force or violence or fear of injury, immediate or future, to his person or property." Because "battery requires actual physical contact" while "robbery requires only fear of injury, with or without contact," the elements of battery are not an entirely included subset of the elements of robbery.  As such, a robbery may be committed without also committing a battery; thus, battery is not "necessarily included" in the offense of robbery.[FN7] Accordingly, the district court had no obligation to instruct the jury on battery as a lesser included offense of attempted robbery in this case.

Theory of the case

Before we directed full briefing in this appeal, Gaines contended that the district court improperly refused to instruct the jury on battery because his defense theory at trial was tailored to obtaining a conviction on that lesser offense. According to Gaines, the State stipulated to include battery as an option on the verdict form, but later reneged and opposed a battery instruction at trial because battery was not a lesser included offense of attempted robbery.

In this case, the record reflects that Gaines requested the district court to instruct the jury on battery as a lesser included offense of attempted robbery.  Notably, Gaines did not request the battery instruction on grounds that battery was his theory of the case.  Thus, we review this issue for plain error.[FN8]

Under NRS 175.161(3), a party seeking an instruction must proffer the instruction and request that it be submitted to the jury.   Thus, while a criminal defendant is entitled "to a jury instruction on his or her theory of the case, so long as there is some evidence, no matter how weak or incredible, to support it," a district court has no duty to give such an instruction unless the defendant requests it. Moreover, absent a request, the district court was not required to infer Gaines's theory of the case nor assume that Gaines was seeking the instruction on a different basis than he articulated at trial. Thus, because Gaines specifically requested an instruction on battery as a lesser included offense, we conclude that the district court did not commit plain error in failing to give the instruction on battery as a theory of the case instruction.

[FN7]  This analysis does not change if the greater offense is attempted robbery because attempted robbery, like robbery, may still be committed in more than one way:  i.e., by the attempted use of force or coercion.

[FN8] . . . .  Gaines argues that the State's alleged stipulation to place battery on the verdict form preserved this issue for appeal.  Stipulations made

> during pretrial negotiations, however, are not a proper means of preservation unless accompanied by a specific objection at trial. See NRS 47.040(1)(a).

#31, Ex. 23, at 2-5 (record and citation footnotes omitted).

On state post-conviction review, the state district court rejected the claim of ineffective assistance of trial counsel on the following grounds:

> . . . . Mr. Parris was not ineffective for failing to request a battery instruction as a theory of the case rather than simply requesting it as a lesser included offense. Battery is not a defense to attempt robbery and thus any request by Mr. Parris to instruct the jury on battery, as Gaines' theory of the case, would have been rejected.

#43, Ex. 44A, at 4.

The Supreme Court of Nevada affirmed on June 9, 2010. The court noted that petitioner had not specifically addressed or challenged the state district court's findings, and it held that petitioner had failed to demonstrate prejudice.[32]

The state high court's rejection of the claim of ineffective assistance of trial counsel was neither contrary to nor an unreasonable application of clearly established federal law.

The state district court held that a request for a battery instruction as a theory of the case instruction would have been rejected, and the state supreme court affirmed the lower court's decision. The state supreme court's implicit rejection of the underlying state law predicate for petitioner's ineffective-assistance claim is the final word on that matter. The state supreme court is the final arbiter of Nevada state law. Petitioner points to the fact that the Supreme Court of Nevada held on direct appeal that a failure to give the instruction as a theory of the case instruction was not plain error overriding the failure to present the instruction on that basis at trial. However, such a holding establishes only that no plain error had been demonstrated requiring reversal even without the issue being raised below. The holding did not establish that it would have been error to refuse the instruction if it in fact had been requested as a theory of the case instruction.

_____

[32]#31, Ex. 51, at 1-2.

Petitioner otherwise has not demonstrated that federal law as determined by the United States Supreme Court -- as opposed to by lower federal court decisions not applying AEDPA deferential review – clearly established at the time of the state supreme court's June 9, 2010, decision that the giving of the instruction was required by the Constitution.  The state high court's rejection of the claim thus was neither contrary to nor an unreasonable application of clearly established federal law.

Ground 24 therefore does not provide a basis for federal habeas relief.[33]

### ***Consideration of Possible Issuance of a Certificate of Appealability***

Under Rule 11 of the Rules Governing Section 2254 Cases, the district court must issue or deny a certificate of appealability (COA) when it enters a final order adverse to the applicant.

As to the claims rejected by the district court on the merits, under 28 U.S.C. § 2253(c), a petitioner must make a "substantial showing of the denial of a constitutional right" in order to obtain a certificate of appealability.  *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000); *Hiivala v. Wood*, 195 F.3d 1098, 1104 (9th Cir. 1999).  To satisfy this standard, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong."  *Slack*, 529 U.S. at 484.

As to claims rejected on procedural grounds without reaching the underlying constitutional claims, the petitioner must show, in order to obtain a certificate of appealability that jurists of reason would find it debatable whether the petition stated a valid claim of a

---

[33]The Court notes two additional points applicable to all of the claims herein.

First, petitioner's reliance on the Nevada state constitution is misplaced in this federal habeas action. Any *arguendo* error of state law, including state constitutional law, does not provide a basis for federal habeas relief.

Second, petitioner alleges at numerous points in his claims that trial and/or appellate counsel did not follow his alleged instructions in the situation.  These allegations do not add anything of substance to the claims.  In the contexts presented here, counsel is not ineffective for not following a lay criminal defendant's instructions as to how to proceed at trial or on appeal.  With regard to the decisions and actions relevant to the claims discussed herein, the defendant does not call the shots.  Gaines' assumption that an experienced criminal defense attorney essentially was required to follow each and every one of his instructions as to how to proceed at trial and/or on appeal is fundamentally flawed.

1  denial of a constitutional right and that jurists of reason would find it debatable whether the
2  district court was correct in its procedural ruling.   *Slack*, 529 U.S. at 484.   While both
3  showings must be made, "a court may find that it can dispose of the application in a fair and
4  prompt manner if it proceeds first to resolve the issue whose answer is more apparent from
5  the record and arguments."   529 U.S. at 485.   Where a plain procedural bar is properly
6  invoked, an appeal is not warranted.   529 U.S. at 484.

7     The Court denies a certificate of appealability as to all claims, for the reasons below.

8     ***Ground 11***

9     In Ground 11, petitioner alleges that he was denied effective assistance of appellate
10  counsel when counsel failed to raise a claim of alleged prosecutorial misconduct on direct
11  appeal based on the State's references in closing argument to petitioner allegedly "needing
12  a fix."   The state supreme court's rejection of this claim was neither contrary to nor an
13  unreasonable application of clearly established federal law.   The testimony at trial did not
14  distinguish between whether Gaines (as opposed to the victim) was intoxicated from drugs
15  or instead from alcohol in a high drug-use area, such that the State's inference was neither
16  refuted nor compelled by the evidence; trial counsel was able to make use of the State's
17  argument in his closing, causing the State to backtrack on rebuttal; and there was relatively
18  strong evidence of guilt.   The state supreme court's conclusion that there was not a
19  reasonable probability of success on the underlying constitutional claim on a direct appeal
20  was not an unreasonable application of clearly established federal law. **See text,** ***supra*, at**
21  **4-11 & n. 11.**

22     ***Grounds 16 through 18***

23     Grounds 16 through 18 are premised in principal part upon an allegation that the State
24  did not file certified copies of the prior Clark County, Nevada convictions upon which
25  petitioner's Clark County, Nevada habitual criminal adjudication in the same state district court
26  was based.   Grounds 16 and 17 allege ineffective assistance of appellate and trial counsel,
27  respectively, in failing to pursue the issue.   Ground 18 is an underlying substantive claim that
28  was found to be procedurally barred in the state courts.

1    The state supreme court's rejection of the claim of ineffective assistance of trial

2 counsel in Ground 17 was neither contrary to nor an unreasonable application of clearly

3 established federal law.  First, the state courts found as a fact that the State in fact presented

4 certified copies of the prior judgments, which were located in the evidence vault.  Second, an

5 explicit formal introduction and admission on the record of the prior convictions was not

6 required by Nevada state law to sustain the habitual criminal adjudication.  Third, to the extent

7 that the state sentencing memorandum that is of record on federal review presented certified

8 copies of two of the three prior judgments of conviction, only two prior convictions were

9 required for the "small" habitual criminal adjudication.  **See text, *supra*, at 12-18.**

10    Moreover, even if it were assumed, *arguendo*, that the state court record at the time

11 of the habitual criminal adjudication was deficient for lack of certified copies of the judgments

12 of conviction, Gaines cannot demonstrate a reasonable probability that a contemporaneous

13 objection by trial counsel would have changed the outcome in the state proceedings.  The

14 prior convictions were not out-of-state convictions that could not be readily produced in

15 response to a technical objection but instead were from the very same state district court in

16 Clark County, Nevada.  A contemporaneous challenge to a technical defect reasonably

17 probably would not have precluded the habitual criminal adjudication but instead would have

18 led to immediate remediation of the alleged technical defect during the habitual criminal

19 adjudication itself.  For this same reason, there is not a reasonable probability that

20 presentation of a contemporaneous technical objection would have preserved a viable claim

21 of error for appellate review.  Again, the more reasonable probability is that any alleged

22 technical defect would have been immediately remedied before an appeal, assuming,

23 *arguendo,* that the state district court simply did not take judicial notice of its own records.  An

24 *arguendo* failure to raise an essentially pointless technical objection capable of immediate

25 remediation does not constitute ineffective assistance of counsel under the *Strickland*

26 standard.  There in truth is absolutely no question that the three prior Clark County convictions

27 from the same court existed, were known to the defense and to Gaines himself, and were not

28 subject to viable challenge.  **See text, *supra*, at 18-20.**

1    The state supreme court's rejection of the claim of ineffective assistance of appellate

2    counsel in Ground 16 also was neither contrary to nor an unreasonable application of clearly

3    established federal law.  There was not a reasonable probability of success on a claim that

4    was of dubious validity in the first instance, given the three points noted above as to Ground

5    17.  Moreover, given that counsel had not raised what would have been a wholly pointless

6    technical objection, if *arguendo* valid in the first instance, in the trial court, appellate counsel

7    in all events had no preserved issue on which to proceed.  There is not a reasonable

8    probability that raising an issue that had not been preserved and that in any event further was

9    of dubious viability in the first instance would have resulted in a different outcome on appeal.

10   **See text,** *supra***, at 20.**

11   The substantive claim in Ground 18 accordingly is clearly procedurally defaulted, as

12   petitioner cannot establish ineffective assistance of appellate counsel in order to demonstrate

13   cause and prejudice.  **See text,** *supra***, at 21.**

14   Finally, to the extent that petitioner also alleges that trial and appellate counsel were

15   ineffective for failing to challenge the adequacy of the notice of the State's intent to seek

16   habitual criminal treatment, the claims are wholly without merit.  The state supreme court's

17   implicit holding that the manner of notice did not give rise to a basis for reversal under state

18   law is the end of the matter as to that underlying state law predicate for the claims.  Petitioner

19   otherwise clearly was on notice of the State's intent to seek habitual criminal treatment, such

20   that he cannot show that a federal constitutional challenge would have had a reasonable

21   probability of success either at sentencing or on appeal.  **See text,** *supra***, at 20 n. 28.**

22   ***Ground 24***

23   In the remaining exhausted claim in Ground 24, petitioner alleges that he was denied

24   effective assistance when trial counsel failed to request an instruction on the offense of

25   battery as a "theory of defense" instruction rather than requesting such an instruction as a

26   lesser included offense.  The state supreme court's rejection of this claim was neither contrary

27   to nor an unreasonable application of clearly established federal law.  The court affirmed a

28   state district court decision that held that the instruction would have been rejected even if it

1  had been presented as a theory of the case instruction, because battery by the offender is

2  not a defense to attempted robbery by the offender.  Petitioner otherwise cannot demonstrate

3  that the instruction was required as a matter of federal constitutional law under clearly

4  established federal law as determined by the Supreme Court.  **See text, *supra*, at 21-25.**[34]

5      ***Prior Exhaustion Holdings***

6      Jurists of reason would not find the Court's holdings that the remaining claims were

7  unexhausted to be debatable or wrong.  **See ## 20, 23 & 38.**

8      A certificate of appealability accordingly will be denied as to all claims and issues.

9      IT THEREFORE IS ORDERED that all remaining claims in the petition are DENIED

10  with prejudice, on the merits as to the remaining claims Grounds 11, 16, 17 and 24 and for

11  procedural default as to Ground 18, and that this action shall be DISMISSED with prejudice.

12      IT FURTHER IS ORDERED that a certificate of appealability is DENIED, as jurists of

13  reason would not find the district court's rejection of the claims presented to be debatable or

14  wrong.  **See text, *supra*, at 25-29.**

15      The Clerk of Court shall enter final judgment accordingly in favor of respondents and

16  against petitioner, dismissing this action with prejudice.

17          DATED:  August 5, 2013.

18

19

20          _____

21          ROGER L. HUNT
          United States District Judge

22  _____

23      [34]The Court notes that petitioner includes alleged facts regarding the incident in the reply (#44) that
have no support in the trial record.  Petitioner may not rely on post-conviction review upon factual assertions

24  regarding the incident that  were not presented at trial.  Petitioner's bald supposition that the second state
district judge assigned to his state petition was biased and did not consider the prior proceedings in the

25  matter does not lead to a different conclusion herein.  Defense counsel's testimony acknowledging sundry
points at the state court evidentiary hearing also did not dictate a grant of either state or federal post-

26  conviction relief.  Petitioner's *pro se* "judicial notice" filed on March 1, 2007, in the state supreme court does
not constitute evidence proving Gaines' factual assertions therein.  See #45.  Nor was counsel required, per

27  case law cited repeatedly in this matter, to follow his instructions regarding the specific issues to raise on
direct appeal.  The Court declines respondents' request for a finding under N.R.S. 209.451 at least at this

28  juncture, although the request is not without some considerable foundation.  See #41; #42, at 23-24.